# Exhibit B

IN THE UNITED STATES DISTRICT COURT

FOR THE STATE OF HAWAII

| | |
|---|---|
| ERNEST S. MAEMORI and LORETTA JANE MAEMORI; ET AL; <br><br> Plaintiffs, <br><br> vs. <br><br> 1. AIR LIQUIDE AMERICA CORPORATION, a Delaware corporation, individually and as successor to BIG THREE INDUSTRIES, INC.; ET AL; <br><br> Defendants. | ) CIVIL NO. 07-00332 SPK KSC <br> ) <br> ) <br> ) <br> ) <br> ) MEMORANDUM IN SUPPORT OF <br> ) MOTION FOR REMAND TO STATE <br> ) COURT <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM IN SUPPORT OF MOTION FOR REMAND TO STATE COURT

### BACKGROUND

On August 5, 2005, Maemori, et al. v. Air Liquide, et al. was filed in the First Circuit Court of the State of Hawaii. Plaintiffs amended the original complaint on two occasions, most recently filing a second amended complaint on August 4, 2006. On June 15, 2007, the case was removed to the United States District Court for the State of Hawaii pursuant to 28 U.S.C. § 1442, and the defendants filed for a conditional transfer of the case to the MDL court in Ohio. Recently, all parties agreed to stipulate to the transfer of this case to the MDL court are currently awaiting an order from the JPML to that effect.[1]

---

[1] The *Maemori* case, as originally filed in Hawaii State Court, is a multi-plaintiff case. When this case is finally transferred to the Northern District of Ohio by the JPML, however, plaintiffs anticipate that their claims will be severed into separate cases in keeping with the MDL Court's standing Order of November 20, 2003. Thus, a complete alphabetical listing of the plaintiffs in the *Maemori* case is furnished by Exhibit A to this motion. A copy of the Plaintiffs' Second Amended Complaint–the operative complaint at the time of removal–is attached as Exhibit B. Also, a copy of the Notice of

Plaintiffs in the matter before the Court are professional welders and their spouses. They bring suit for the severe and incurable neurological disease the welders suffer as a result of inhalation of manganese contained in fumes emitted by certain welding products during the normal use of such products. They are victims of an industry-wide conspiracy among manufacturers and distributors of welding products, and others acting in concert with them, to conceal the health hazards of manganese contained in welding fumes. This conspiracy extended over the course of numerous decades and was accomplished through, inter alia, the participation of the manufacturers and distributors in certain trade associations, which they used to suppress information about the health-related risks of manganese exposure, to oppose restrictions on such exposure, and to disseminate false and misleading safety standards. Plaintiffs assert claims for conspiracy, negligence, strict products liability, and loss of consortium. Plaintiffs now seek remand of their claims to Hawaii state court based on untimeliness of removal and lack of federal subject matter jurisdiction. Pursuant to 28 U.S.C. § 1447(c), Plaintiffs request also the costs and expenses, including attorney fees, incurred as a result of the removal of their claims.

Additionally, not all of the Plaintiff's cases removed in Defendants removal worked on military projects or for government contractors. Some Plaintiff's were purely employed in the private sector. Defendant Miller Welding, Inc. is a Hawaii corporation. Defendant Miller Welding, Inc. sold welding rods to certain Plaintiff's. In the event any Plaintiff's purchased their welding rods from this Defendant and/or were not welders with anything other than private projects then this matter cannot qualify for removal under either diversity jurisdiction or any other subject matter jurisdiction with regard to those Plaintiff's.

---

Removal is attached as Exhibit C.

## ARGUMENT

A.  **The Removal of the Claims Before the Court Was Untimely.**

An action must be removed no later than thirty days from the date a defendant receives an initial pleading or "other paper" showing that a case is removable. *See* 28 U.S.C. § 1446(b). The procedural requirements of 28 U.S.C. § 1446 must be strictly construed. *See First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 462 (6th Cir. 2002) ("[T]he removal statutes are to be narrowly construed."); *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000) ("[B]ecause they implicate federalism concerns, removal statutes are to be narrowly construed."); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999) ("In interpreting the statutory language, we are mindful that the statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction."). *Accord Ortiz v. General Motors Acceptance Corp.*, 583 F. Supp. 526, 529 (N.D. Ill. 1984) ("A defendant seeking removal must strictly comply with all the statutory requirements . . . and where there is doubt as to whether the requirements have been satisfied, the case should be remanded.").

As the MDL Court held in its Orders entered December 30, 2003, and March 1, 2004, when a defendant asserts an affirmative defense showing that removal pursuant to 28 U.S.C. § 1442, so-called "federal officer" jurisdiction, may be available, this puts co-defendants on notice for purposes of the thirty-day period for removal under 28 U.S.C. § 1446. On October 6, 2006, all of the major defendants, including Lincoln Electric, ESAB, Illinois Tool Works, B.O.C., etc. filed their answer and affirmative defenses in the First Circuit Court for the State of Hawaii. The defendants asserted, inter alia, an affirmative defense based on the so-called "government contractor defense," which, as is discussed in more detail infra, is a federal defense capable of conferring federal officer jurisdiction

3

pursuant to 28 U.S.C. § 1442.[2] Not until eight months later, on June 15, 2007, did those same defendants remove this case, claiming federal officer jurisdiction is proper in this case under 28 U.S.C. § 1442.

In sum, the removing Defendants were on notice a for over eight months before they removed this case that "federal defenses were colorable and available." *In Re: Welding Rod Prods. Liab. Litig.*, No. 1:03-CV-17000, at 2 (N.D. Ohio Mar. 1, 2004) (order denying reconsideration). The MDL Court already has remanded cases removed under circumstances substantially identical those under which this case was removed on the grounds that removal was untimely. As the MDL Court held in its Orders entered December 30, 2003, and March 1, 2004, when one defendant pleads federal defenses, this gives notice to all other defendants sufficient to begin the 30-day period for removal under 28 U.S.C. § 1446(b). Thus, the removing Defendants' notice of removal was filed over eight months late, and this case must be remanded to Hawaii State Court. *See In Re: Welding Rod Prods. Liab. Litig.*, No. 1:03-CV-17000, at 2-6 (citing *Holston v. Carolina Freight Carriers Corp.*, 936 F.2d 573 (6th Cir. 1991) (Table)).

### B. The Court Does Not Have Jurisdiction Pursuant to 28 U.S.C. § 1442.

The removing Defendants claim also that federal jurisdiction is proper in this case pursuant to 28 U.S.C. § 1442, which provides, in pertinent part,

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right,

---

2. A copy of the defendants' initial answer and affirmative defenses is attached hereto as Exhibit D.

4

title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). Application of the statute to a particular case is controlled by a three- prong test: (1) the removing defendant must be a federal officer or a "person" acting under a federal officer; (2) the removing defendant must have acted at the direction of an officer of the United States and a causal nexus must exist between the defendant's actions under cover of federal office and the plaintiff's claims; and (3) the removing defendant must assert a colorable federal defense. *See Stein-Sapir v. Birdsell*, 673 F.2d 165, 166 (6th Cir. 1982); *Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 860 (S.D. Ohio 2002); *Brown & Williamson Tobacco Corp. v. Wigand*, 913 F. Supp. 530, 532 (W.D. Ky. 1996). *See also In re Welding Rod Prods. Liab. Litig.*, 2004 WL 1179454, at *8 (quoting *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998)) ("To establish removal jurisdiction under section 1442(a)(1), a defendant must establish that: '(1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.'").

In this instance the removing Defendants attempt to satisfy the third prong of the test for federal officer jurisdiction set out above by asserting two federal defenses: (1) the so-called "government contractor defense" and (2) a defense based upon the Defense Production Act of 1950, 50 U.S.C. App. §§ 2061-2166 ("DPA"). The removing Defendants are wrong. Neither of their asserted federal defenses are colorable so as to establish federal officer jurisdiction pursuant to 28 U.S.C. § 1442.

5

1.  **The Removing Defendants Have Failed to Establish the Government Contractor Defense.**

The government contractor defense shields manufacturers from liability for alleged design defects in the production of military equipment. The defense also applies, in limited circumstances, in a case premised upon, as here, a failure to warn. *See Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). The government contractor defense precludes state-law liability for design defects in military equipment when: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers and the use of the equipment that were known to the supplier but not to the United States. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1998); *Landgraf v. McDonnell Douglas Helicopter Co.*, 993 F.2d 558, 559-60 (6th Cir. 1993); *In re Aircraft Crash Litig. Frederick, Md., May 6, 1981*, 752 F. Supp. 1326, 1335 (S.D. Ohio 1990). The government contractor defense allows the government's immunity from suit to benefit a contractor "where the performance of a discretionary function is at issue." *Boyle*, 487 U.S. at 511. *See also In re Aircraft Crash Litig.*, 752 F. Supp. at 1334.

In *Tate* the court formulated a three-part test that tracked *Boyle* for analyzing the government contractor defense in a failure to warn case. When state law otherwise would impose liability for a failure to warn of dangers in using military equipment, the law is displaced if the contractor can show: (1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers and the equipment's use about which the contractor knew, but the United States did not. *See Tate*, 55 F.3d at 1157. In this case, none of the three prongs of

6

the *Tate* standard are satisfied.

With regard to the test's first prong, in *Tate* the court recognized that the government's involvement in developing warnings must "transcend rubber stamping." 55 F.3d at 1157. The government must go "beyond approval and actually determine[ ] for itself the warnings to be provided." *Id.* For the government to make the necessary informed determination, the first prong requires that the government "be both knowledgeable and concerned about the contents of the proposed warnings **before granting its approval**." *Tate v. Boeing Helicopters*, 140 F.3d 654, 658 (6th Cir. 1998) (emphasis added). Casual knowledge does not suffice. "The government is sufficiently knowledgeable when it has a complete enough understanding of the proposed warnings to reasonably recognize which hazards have been thoroughly addressed and which have not." *Id.* Moreover, government concern about warnings must be express. "The government is sufficiently concerned when it demonstrates a willingness to remedy or require the remedy of any inadequacies it finds in the proposed warnings." *Id.* In this case the removing Defendants do not allege that the military played any part in developing the warnings placed on Defendants' welding rods. And in fact the military played no such role. Instead, the industry developed the warnings. The government's passive role with respect to warnings manifests neither the knowledge nor the control the test requires. The "continuous back and forth" review required to establish the first prong of the *Tate* standard plainly is lacking. *Tate*, 55 F.3d at 1154.

The second prong of the *Tate* standard ensures that the government contractor defense protects the exercise of discretion by the government, not the contractor. If the manufacturer, not the government, exercised discretion in determining the warnings to be given, the test's second prong is not satisfied. Thus, the removing Defendants must establish that they developed warnings on

7

welding rods "which conform to the warnings approved by the government." *Tate*, 140 F.3d at 659. However, their notices of removal do not allege any such approval, nor did any such approval occur. As discussed, the warnings on welding rods were developed by the industry. The removing Defendants had absolute discretion to determine the nature and extent of the warnings to be placed on the welding rod products. Conversely, no government discretion was exercised in formulating the language to be used or the nature of the dangers to be disclosed. Thus, the second prong of the *Tate* standard is not met.

Finally, the third prong of the *Tate* standard encourages "frank communication to the government of the equipment's dangers and increases the likelihood that the government will make a well-informed judgment." 55 F.3d at 1157. It requires "a showing that the manufacturer warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not." *Tate*, 140 F.3d at 660. The removing Defendants do not allege, nor can they show, that they warned the government of the dangers of manganese toxicity from exposure to manganese-laden welding rod fumes that were known to the welding rods industry. The third requirement of *Tate* is not met.

In sum, the welding rods in the instant case indisputably were manufactured by private companies for use by the general welding public. The development of the welding rods and the warnings to be placed on them were left to the individual manufacturers' discretion. The removing Defendants disclosed to no one, including the military, the dangers of manganese toxicity in the welding process. The military could not exercise its discretion in determining the extent and nature of warnings to be placed on welding consumables because the removing Defendants suppressed information about those risks from everyone. Having failed to satisfy the requirements of *Tate*, the

8

removing Defendants have failed to show a colorable government contractor defense, so that federal officer jurisdiction does not exist in this case.

### 2. The Removing Defendants Have Failed to Establish a Colorable Federal Defense Based upon the DPA.

The removing Defendants also attempt to invoke the DPA as a colorable federal defense for purposes of removal under 28 U.S.C. § 1442. The DPA applies to contract cases, not tort claims like those asserted in the instant matter. The DPA provides, in pertinent part, that "[n]o person shall be liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this Act." 50 App. U.S.C. § 2157. The purpose of the DPA, which was enacted during the Korean War, is to ensure an adequate supply of material for defense production during wartime. *See Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 992-93 (5th Cir. 1976); *Ellis v. Bell Helicopter Textron, Inc.*, 1985 WL 77599, at *3 (D. Md. May 28, 1985). The DPA permits government defense contractors to satisfy their obligations to the government without fear of civil liability to non-government contracting partners whose orders may be subordinated to the government's needs. *See, e.g., Eastern Air Lines*, 532 F.2d at 997 (quoting *United States v. Texas Constr. Co.*, 224 F.2d 289, 293 (5th Cir. 1955)) (explaining that the DPA "is simply declaratory of the common law . . . doctrine of impossibility").

Just as the DPA codifies the doctrine of impossibility, so the authority is quite uniform to the effect that the DPA applies only in contract cases, not tort cases. *See, e.g., Hercules Inc. v. United States*, 24 F.3d 188, 203-04 (Fed. Cir. 1994); *Eastern Air Lines*, 532 F.2d at 997; *In re Aircraft Crash Litig.*, 752 F. Supp. at 1330 n.2; *Ellis*, 1985 WL 77599, at *3. Accordingly, the DPA

9

does not provide a colorable federal defense in this instance. Thus, federal officer jurisdiction does not exist in this case.

### C. Cases Involving Privately Employed Plaintiff's Should Be Remanded

A number of Plaintiff's in this action were privately employed and may not have ever worked on a government contract. One defendant is a Hawaii based corporation that sold welding rods to some of the Plaintiff's. Jurisdictional discovery should be conducted and in the event either diversity jurisdiction does not exist in an individual case or there was no subject matter jurisdiction then those cases should be remanded.

### CONCLUSION

For all of the foregoing reasons, Plaintiffs' claims should be remanded to Hawaii State Court for lack of federal subject matter jurisdiction and/or lack of diversity jurisdiction. Pursuant to 28 U.S.C. § 1447(c), Plaintiffs should be awarded the costs and expenses, including attorney fees, incurred as a result of the removal of their claims.

Date: Honolulu, Hawaii, July 11, 2007.

_____
JANICE P. KIM
Attorney for Plaintiffs